# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **MELISSA DAWN BARNETT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | No. CIV-25-740-R |
| | ) | |
| **BRYAN L. BILLINGS ESQ., et al,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>ORDER</u>

This action arises from Plaintiff's arrest by officers of the Woodward Police Department after a bench warrant was issued in a small claims action concerning the collection of a debt. Plaintiff alleges that Defendant Bryan Billings, doing business as Billings and Billings, and acting as an attorney for Benbrook Loans, LLC, violated her constitutional rights and state law during the small claims case. She further alleges that the City of Woodward, the Woodward Police Department, Chief of Police Billy Parker, and officers Dylan Penix and Don Matthews violated her constitutional rights and state law by arresting her on the bench warrant. Now pending before the Court is a Motion to Dismiss filed by Defendant Billings [Doc. No. 3] and a Motion to Dismiss filed by Defendants City of Woodward, the Woodward Police Department, Parker, Penix and Matthews [Doc. No. 13]. Both motions are fully briefed [Doc. Nos. 16, 17, 18] and at issue.

1

## I.     Factual Background

According to the allegations in the Complaint,[1] Mr. Billings, acting as an attorney and agent for Benbrook Loans, LLC, filed a small claims lawsuit against Plaintiff to recover on an unsecured loan owed to Benbrook by Plaintiff. Shortly thereafter, Plaintiff allegedly told Benbrook that her husband, whom Plaintiff was in the process of divorcing, was ordered by the divorce court to pay and assume the loan. Despite this, Mr. Billings (again, acting as the attorney for Benbrook) obtained a judgment against Plaintiff in the small claims action for the amount of the loan, plus interest and attorney fees and costs. Mr. Billings then filed a motion for asset hearing and the court entered an order setting the hearing for August 11, 2021. Ms. Barnett appeared on that date and agreed to pay monthly installments on the loan. The court entered an order memorializing the parties' agreement and set a "review hearing on defendant's compliance with said order" for November 8, 2021. The court's order instructed Ms. Barnett to appear without further notice and that a failure to appear may result in the issuance of a bench warrant for her arrest.

On November 8, 2021, the small claims court entered what Plaintiff describes as an "ex parte summary order" continuing the review hearing to February 25, 2022. The court entered a subsequent "ex parte summary order" continuing the review hearing from February 25, 2022 to June 8, 2022, then again from June 8, 2022 to October 28, 2022, then

---

[1] The case was commenced in state court with the filing of a Petition and subsequently removed to federal court. Consistent with the nomenclature of the Federal Rules of Civil Procedure, the Court refers to the operative pleading as the Complaint.

again from October 28, 2022 to March 8, 2023. Ms. Barnett alleges that the court docket fails to show that she received, approved, or was served with these continuance orders.

On September 19, 2022, Mr. Billings (acting as the attorney for Benbrook) filed a Statement of Judgment with the Woodward County Clerk "falsely claiming" that the entire judgment remained due and owing and which clouded title to her property and adversely affected her credit standing. On March 8, 2023, the small claims court entered an order indicating that Ms. Barnett failed to appear at the review hearing. The court also authorized issuance of a bench warrant and set bond at $1,000. On April 4, 2023, Mr. Billings allegedly prepared the bench warrant and had it issued. On April 14, 2023, Ms. Barnet paid the remaining balance on the debt and an agent of Mr. Billings provided her a receipt for the payment.

Five days later, on April 19, 2023, Mr. Billings filed a motion and order to recall the bench warrant in the small claims court. The order, which was entered by the small claims court and placed on the docket, additionally states that "[a]ll provisions of the Order entered herein on August 11, 2021 shall remain in full force effect." Recall that the August 11, 2021 order is the initial order memorializing the parties' agreement to pay off the loan debt in installments. Ms. Barnett alleges that Mr. Billings insists on personally delivering all bench warrants/recalled warrants to the county sheriff and that, in this case, he failed to deliver the order recalling the bench warrant for Ms. Barnett to the sheriff's office. As a result, the bench warrant showed as an active bench warrant on the computer.

On May 19, 2023, Mr. Billings filed a Release and Satisfaction of Judgment with the county clerk, confirming that the judgment against Ms. Barnett had been paid in full. However, Ms. Barnett also alleges that Mr. Billings did not file a release of the Statement of Judgment that was filed on September 19, 2022 and that this judgment continued to cloud her title and damage her credit standing.

The remaining defendants come into the picture on June 15, 2023. On that date, Ms. Barnett contacted the Woodward Police Department to report an assault/harassment. Officers Penix and Matthews responded to Ms. Barnett's home, took her complaint, and then informed her that there was an active bench warrant for her arrest. Ms. Barnett told them that the bench warrant had been recalled, the judgment released, and that they could confirm this by viewing the public records available on the court docket. Officers Penix and Matthews declined to do so and placed her under arrest. Ms. Barnett alleges the officers acted in retaliation for a prior incident involving her son and that the officers ridiculed her while was in their custody. Ms. Barnett was booked into the Woodward County Jail until she posted a bond.

Finally, on December 31, 2024, Mr. Billings and/or Benbrook filed a release of the September 19, 2022 Statement of Judgment with the county clerk.

Based on these allegations, Ms. Barnett asserts a slew of claims under state and federal law. Defendants move for dismissal under Fed. R. Civ. P. 12(b)(6), contending that Ms. Barnett has failed to state a plausible claim to relief. As explained below, Defendants' arguments are well-taken.

4

## II.    Standard

To survive a motion to dismiss under Rule 12(b)(6), a pleading must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a complaint "does not need detailed factual allegations" to state a plausible claim, it does require "more than labels and conclusions." *Twombly*, 550 U.S. at 555. All well-pleaded factual allegations are accepted as true and viewed in the light most favorable to the plaintiff. *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007).

## III.    Discussion

### A.  Claims against Mr. Billings

Plaintiff asserts claims against Mr. Billings for conspiracy under 42 U.S.C. § 1983, deceptive and unfair trade practices in violation of the Oklahoma Consumer Protection Act, violation of the Fair Debt Collection Practices Act, harassment/malicious prosecution/abuse of process, intentional infliction of emotional distress, and negligence. Each claim is addressed in turn.

### 1.  Conspiracy to Violate Civil Rights under § 1983

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487

U.S. 42, 48 (1988). "To occur under color of state law, the deprivation of a federal right 'must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible' and 'the party charged with the deprivation must be a person who may fairly be said to be a state actor ... because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.'" *How v. City of Baxter Springs, Kansas*, 217 F. App'x 787, 792 (10th Cir. 2007) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). Although private conduct does not satisfy this requirement, "[a] § 1983 conspiracy claim may arise when a private actor conspires with state actor to deprive a person of a constitutional right under color of state law." *Dixon v. City of Lawton*, 898 F.2d 1443, 1449 n. 6 (10th Cir. 1990). However, "[w]hen a plaintiff in a § 1983 action attempts to assert the necessary 'state action' by implicating state officials or judges in a conspiracy with private defendants, mere conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action." *Sooner Prods. Co. v. McBride*, 708 F.2d 510, 512 (10th Cir. 1983).

Here. the Complaint alleges that Mr. Billings acted as private attorney for a private party. It does not contain any factual allegations tending to show that that Mr. Billings had an agreement or meeting of the minds with a state actor to deprive Ms. Barnett of any federal right. A private lawyer does not engage in state action or a conspiracy with state actors merely by representing a client in state court. Ms. Barnett's conclusory allegations are insufficient to state a claim for conspiracy under § 1983 against Mr. Billings.

## 2. Deceptive or Unfair Trade Practices in Violation of the Oklahoma Consumer Protection Act

The Oklahoma Consumer Protection Act, Okla. Stat. tit. 15, §§ 751, et seq., provides a private right of action to an "aggrieved consumer" that is the victim of an "unfair or deceptive trade practice." Okla. Stat. tit. 15, §§ 753(20), 761.1. An unfair trade practice "means any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Id*. at § 752(14). A deceptive trade practice "means a misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person." *Id*. § 752(13). Additionally, "[t]o fall within the scope of the OCPA, the alleged deceptive practice must occur in connection with a 'consumer transaction.'" *Levings v. Dimont & Assocs., LLC*, No. CIV-21-21-PRW, 2022 WL 17327493, at *6 (E.D. Okla. Nov. 29, 2022) (quoting Okla. Stat. tit. 15, § 752.12(13). A "consumer transaction" is defined as "the advertising, offering for sale or purchase, sale, purchase, or distribution of any services or any property, tangible or intangible, real, personal, or mixed, or any other article, commodity, or thing of value wherever located, for purposes that are personal, household, or business oriented." *Id.* at § 752(2). Although this definition is admittedly broad, Mr. Billings' conduct does not fall within its scope.

The Complaint alleges that Mr. Billings engaged in litigation activities for his client, including filing suit, obtaining a judgment, and pursuing enforcement of that judgment. The Complaint does not allege any facts showing that Mr. Billings was plausibly involved in a consumer transaction with Ms. Barnett or that Mr. Billing's litigation conduct falls

within the scope of the OCPA. *See Levings v. Dimont & Assocs., LLC,* No. CIV-21-21-PRW, 2022 WL 17327493, at *6 (E.D. Okla. Nov. 29, 2022) ("Plaintiffs fail to explain how a settlement that occurred during a judicial proceeding could constitute a consumer transaction…. It strains the limits of credulity to suggest that the settlement agreement falls within § 752(2)'s definition."); *Chapman v. Chase Manhattan Mortg. Corp.*, No. 04-CV-0859-CVE-FHM, 2007 WL 2815246, at *4 (N.D. Okla. Sept. 24, 2007) ("The Court finds that Chase did not engage in an unfair or deceptive trade practice by initiating a foreclosure action when there was a legitimate basis for so doing."); *Hollis v. Stephen Bruce & Assocs.*, No. CIV-07-131-C, 2007 WL 4287623, at *4 (W.D. Okla. Dec. 5, 2007) ("The Court agrees with other judges in this district that the statute does not apply to the debt collection activities by persons or entities uninvolved in the underlying consumer transaction.").

### 3.  Violation of the Fair Debt Collection Practices Act

The Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq., "regulates interactions between consumer debtors and 'debt collectors.'" *James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013). Broadly stated, "the FDCPA prohibits debt collectors from (1) engaging in harassing, oppressive or abusive conduct; (2) using false, deceptive or misleading representations or means; and (3) using unfair or unconscionable means." *Dillon v. Riffel-Kuhlmann*, 574 F. Supp. 2d 1221, 1223 (D. Kan. 2008). A debt collector is defined "as 'any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.'" *James*, 724 F.3d at 1315 (quoting 15 U.S.C. § 1692a(6)).

Notably, the FDCPA "applies to 'attorneys who "regularly" engage in consumer-debt collection activity, even when that activity consists of litigation.'" *Id.* (quoting *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995).

The Complaint, however, fails to include any nonconclusory allegations showing that Mr. Billings (or his law firm) regularly collects debts on behalf of others. Ms. Barnett has failed to plausibly allege that Mr. Billings is a debt collector within the meaning of the FDCPA and she has therefore failed to state a claim for violation of the FDCPA. *See Santana v. NCB Mgmt. Servs., Inc*., No. 23-CV-0174-CVE-SH, 2023 WL 3231622, at *2 (N.D. Okla. May 3, 2023) (granting motion to dismiss where plaintiff did not allege any facts "show[ing] that Defendant is a 'debt collector' within the statutory language").

### 4. Harassment/Malicious Prosecution/Abuse of Process

Ms. Barnett does not cite any authority indicating that a separate claim for harassment is a viable cause of action under federal or state law. Her claims for malicious prosecution and abuse of process are also deficient.

To state a claim for malicious prosecution under Oklahoma law, the plaintiff bears the burden of showing "(1) the bringing of the action, (2) its successful termination in favor of the plaintiffs, (3) want of probable cause, (4) malice, and (5) damages." *Meyers v. Ideal Basic Indus., Inc*., 940 F.2d 1379, 1383 (10th Cir. 1991). The Complaint fails to allege factual content plausibly showing that the small claims action was terminated in her favor or want of probable cause and she has therefore failed to state a malicious prosecution claim.

To state a claim for abuse of process, the plaintiff must show "(1) issuance of process; (2) an ulterior purpose; and (3) a willful act in the use of process not proper in the regular conduct of the proceeding." *Id.* at 1382. The third element requires "*some definite act or threat* by the defendant not authorized by the process." *Id.* "Thus, merely showing the defendant carried out the process to its authorized conclusion, even though with bad intentions, is insufficient to establish an abuse of process claim." *Id.* (quotation marks and brackets omitted). The Complaint fails to allege factual content plausibly showing that Mr. Billings used the filing of the lawsuit to obtain some collateral advantage or did anything other than carry out the process to its authorized conclusion.

### 5.  Intentional Infliction of Emotion Distress

A claim for intentional infliction of emotional distress requires proof that "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." *Computer Publications, Inc. v. Welton*, 49 P.3d 732, 735 (Okla. 2002). "The second element of this tort requires proof that the defendant's conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and that such conduct is regarded as atrocious and utterly intolerable in a civilized community." *Id.* The fourth element "requires proof that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it." *Id.* at 736. Applying these standards, the Complaint fails to include factual allegations sufficient to plausibly show either extreme and outrageous conduct by Mr. Billings or severe emotional distress by Ms. Barnett. *See Mengert v. United*

*States*, 120 F.4th 696, 714 (10th Cir. 2024) (finding allegations that plaintiff experienced panic attacks and physical symptoms from distress insufficient to state a plausible claim for intentional infliction of emotional distress under Oklahoma law).

### 6. Negligence

To prevail on a negligence claim under Oklahoma law, the plaintiff must establish: "1) a duty owed by the defendant to protect the plaintiff from injury; 2) a failure to perform that duty; and 3) injuries to the plaintiff which are proximately caused by the defendant's failure to exercise the duty of care." *Smith v. City of Stillwater*, 328 P.3d 1192 (Okla. 2014) (citations omitted). A duty arises when a party "is placed in such a position with regard to another that it is obvious that if he did not use due care in his own conduct he will cause injury to the other [.]" *Wofford v. E. State Hosp.*, 795 P.2d 516, 519 (Okla. 1990). Put another way, a "defendant owes a duty of care to all persons who are foreseeably endangered by his conduct with respect to all risks which make the conduct unreasonably dangerous." *Id.* (quotation marks omitted).

In Oklahoma, "no civil remedy is available for litigation-related misconduct." *Hutchinson v. Carter*, 33 P.3d 958, 961 (Okla. Civ. App. 2001). "[A]dvocacy, even abusive advocacy, is not an independent tort that a party litigant may bring against a lawyer or his client outside the action in which the person believes the misconduct occurred." *Id.* at 961; *see also Allied Fin. Servs., Inc. v. Easley,* 676 F.2d 422, 423 (10th Cir. 1982) ("As a general rule, an attorney does not owe a legal duty to his client's adversary when acting on behalf of his client."). Plaintiff does not cite any authority showing that an attorney acting on behalf of his client owes a duty of reasonable care to an opposing party or that any such

11

duty is breached by an attorney's negligent failure to file or submit documents. *See Allied,* 676 F.2d at 423 ("[A]n attorney must be able to attempt to collect a judgment without fear of being held liable for negligent injury to the adverse party. Mr. Easley's duty of care in this situation was to his client and to the legal system, not to Allied"). Based on the allegations in the Complaint and the argument presented by Ms. Barnett, the Court is not persuaded that Ms. Barnett had adequately pleaded facts establishing a duty or breach.

### B. Claims against the City of Woodward, the Woodward Police Department, Chief Parker, Officer Penix, and Officer Matthews

Plaintiff asserts claims against the City of Woodward, the Woodward Police Department, Chief Parker, Officer Penix and Matthews under 42 U.S.C. § 1983, alleging that her detention, search, seizure, arrest and confinement violated her Fourth, Fifth, and Fourteenth Amendment rights and there was a conspiracy to violate her rights.

To succeed on a claim under 42 U.S.C. § 1983[2] against a municipal entity such as the City of Woodward, the plaintiff must, in addition to establishing an underlying constitutional violation, prove that (1) a government's official policy (2) caused the constitutional injury and (3) the policy was enacted or maintained with the requisite state of mind. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir.

---

[2] The Complaint does not provide fair notice as to whether any claims under state law are asserted against the City of Woodward, Chief Parker, Officer Penix, and Officer Matthews. In their motion to dismiss, Defendants assert the individual defendants are immune from state law tort claims pursuant to the Oklahoma Governmental Tort Claims Act, Okla. Stat. tit. 51, § 152.1(a). Ms. Barnett provides no response to this argument and the argument is therefore confessed. *See* LCvR7.1; *Hinsdale v. City of Liberal, Kansas*, 19 Fed. Appx. 749, 768–70 (10th Cir. 2001) (affirming district court's presumption that plaintiff abandoned an argument raised in his complaint where plaintiff did not address the argument in his response to defendant's motion for summary judgment).

2013). "A challenged practice may be deemed an official policy or custom for § 1983 municipal-liability purposes if it is a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision." *Id*. at 770. Notably, "proof of a single incident of unconstitutional activity is ordinarily not sufficient to impose municipal liability[.]" *Moss v. Kopp*, 559 F.3d 1155, 1169 (10th Cir. 2009).

The Complaint fails to include factual allegations, as opposed to conclusory statements, plausibly showing that Ms. Barnett's arrest was caused by a policy or custom of the City of Woodward or that the City of Woodward acted with deliberate indifference to a constitutional violation. For that reason, Ms. Barnett has failed to a state a claim under § 1983 against the City of Woodward.

The Complaint does not indicate whether Chief Parker is sued in his official or individual capacity. To the extent Ms. Barnett intends to assert an official capacity claim, the claim is duplicative of the claim against the City of Woodward. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("An official capacity suit is, in all respects other than name, to be treated as a suit against the entity"). To the extent Ms. Barnett intends to assert an individual capacity claim against Chief Parker, the Complaint does not allege facts showing that Chief Parker personally participated in the events described in the Complaint or that there is an affirmative link between Chief Parker's supervisory responsibilities and the claimed constitutional violation. *Bruner v. Baker*, 506 F.3d 1021, 1026 (10th Cir. 2007) ("Section 1983 claims against public officials must demonstrate some form of personal involvement on the part of the individual defendants."); *Cox v. Glanz*, 800 F.3d 1231, 1248

13

(10th Cir. 2015) ("A plaintiff arguing for the imposition of supervisory liability therefore must show an affirmative link between the supervisor and the constitutional violation.") (quotation marks omitted); *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996) ("In other words, it is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the violation."). Ms. Barnett has therefore failed to state a claim under § 1983 against Chief Parker.

Officers Penix and Matthews invoke the defense of qualified immunity, although their motion does little to address the governing legal standards or relevant factual contentions. Still, when a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to "establish (1) the defendant violated a federal statutory or constitutional right and (2) the right was clearly established at the time of the defendant's conduct." *Ullery v. Bradley*, 949 F.3d 1282, 1289 (10th Cir. 2020). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quotation marks and brackets omitted). "Ordinarily, to make such a showing of clearly established law in our circuit, the plaintiff must point to a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Frasier v. Evans*, 992 F.3d 1003, 1014 (10th Cir. 2021) (internal quotation marks and brackets omitted). Importantly, the "clearly established law should not be defined at a high level of generality" but must instead "be particularized to the facts of the case." *White v. Pauly*, 580 U.S. 73,

79 (2017) (quotation marks and citation omitted). "The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established." *al-Kidd*, 563 U.S. 731, 742 (2011). However, "when a public official's conduct is so egregious even a general precedent applies with obvious clarity, the right can be clearly established notwithstanding the absence of binding authority involving materially similar facts." *Ullery*, 949 F.3d at 1291 (quotation marks omitted)

Ms. Barnett has failed to carry her burden of establishing that the Officers Penix and Matthews violated a clearly established constitutional right by refusing to confirm that an otherwise facially valid arrest warrant had been recalled. Ms. Barnett relies on general statements of law and does not identify a Tenth Circuit or Supreme Court case that resembles the specific conduct involved here. *See Hill v. Bogans*, 735 F.2d 391, 393 (10th Cir. 1984) ("Hill argues that by failing to check the validity of the warrant when requested to do so, Officer Bogans violated his civil rights. We disagree. Unless a warrant is facially invalid an officer has no constitutional duty to independently determine its validity."); *Jones v. Hacker*, No. 13-CV-444-JHP, 2015 WL 1279357, at *6 (E.D. Okla. Mar. 20, 2015) ("Numerous courts have concluded that arrests on recalled or invalid warrants did not violate constitutional rights where the arresting officer was not aware that the warrant had been recalled or was otherwise invalid.").

When a defendant raises qualified immunity as a defense, the burden is on the plaintiff to demonstrate that the alleged constitutional violation was clearly established at the time it took place. Ms. Barnett has pointed to no clearly established law with the

requisite level of specificity and for that reason, she has failed to overcome the assertion of qualified immunity by officers Penix and Matthews.

Last, the Woodward Police Department, as a subordinate department of the City of Woodward, lacks the capacity to be sued and is not a proper defendant. *See Currie v. Oklahoma City Police Dep't*, No. CIV-08-194-HE, 2008 WL 1946787, at *4 (W.D. Okla. Apr. 30, 2008); *Benavides v. City of Oklahoma City*, No. CIV-11-126-C, 2011 WL 1457331, at *1 (W.D. Okla. Apr. 14, 2011).

### C.  Plaintiff's Response Briefs

Plaintiff makes several arguments in her response briefs that are incorrect. To start, she argues that Defendants have improperly referenced material outside the pleadings. In assessing a motion to dismiss under Rule 12(b)(6), the general rule is that a court should consider no evidence beyond the pleadings. *See Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1216 (10th Cir. 2007). However, "the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Id.* at 1216 (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)). In addition, "facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment." *Tal v. Hogan*, 453 F.3d 1244, 1264 n. 24 (10th Cir. 2006). "This allows the court to take judicial notice of its own files and records, as well as facts which are a matter of public record." *Id.* (quotation marks omitted).

Defendants reference Plaintiff's allegations as well as publicly available docket entries from the small claims case, which are referenced in the Complaint and central to

16

Plaintiff's claim. The Court may take judicial notice of the contents of these publicly available records at the motion to dismiss stage. Plaintiff's suggestion that Defendants have introduced evidence outside the pleadings in inaccurate.

In fact, it is Plaintiff who is attempting to introduce evidence and allegations outside the pleadings in her response briefs. Plaintiff's response points to factual allegations and exhibits that are not part of her Complaint and that do not fit into one of the exceptions outlined above. A plaintiff "cannot amend her complaint by adding factual allegations in response to Defendant's motion to dismiss." *Abdulina v. Eberl's Temp. Servs., Inc*., 79 F. Supp. 3d 1201, 1206 (D. Colo. 2015). Thus, in considering Defendants' motions to dismiss, the Court is "limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint." *Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995).

Plaintiff also includes a request for leave to file an amended complaint in her response brief, but has not complied with Local Civil Rule 15.1. This rule requires that a party seeking leave to amend file a separate motion attaching the proposed pleading as an exhibit and stating whether any other party objects to the motion.

Last, to the extent Plaintiff implies that she needs additional discovery to support her claims, it is well-established that "courts will not 'unlock the doors of discovery for a plaintiff armed with nothing more than' legal conclusions, conclusory allegations, and speculation." *Soto for estate of Jimenez v. Bd. of Cnty. Commissioners of Caddo Cnty*., Okla., 748 F. App'x 790, 794 (10th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678-79).

IV.    Conclusion

For the reasons set forth above, the Motion to Dismiss filed by Defendant Billings [Doc. No. 3] is GRANTED and the Motion to Dismiss filed by Defendants City of Woodward, the Woodward Police Department, Parker, Penix and Matthews [Doc. No. 13] is GRANTED. The Woodward Police Department is dismissed with prejudice. The remaining claims are dismissed without prejudice. Within 21 days of the date of this order, Plaintiff may file a separate motion for leave to amend that complies with LCvR 15.1. Plaintiff is reminded of her obligation to comply with both the rules of this Court and the Federal Rules of Civil Procedure.

IT IS SO ORDERED this 4th day of September, 2025.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE